1
2
3          **NOT FOR PUBLICATION**
4
5
6          IN THE UNITED STATES DISTRICT COURT
7          FOR THE DISTRICT OF ARIZONA
8

9    Christopher Crame, et al.,              )   No. CV 12-01969-PHX-SRB
                                             )
10              Plaintiffs,                  )   **ORDER**
                                             )
11   vs.                                     )
                                             )
12                                           )
     360 Management, LLC, et al.,            )
13                                           )
                Defendants.                  )
14                                           )
     _____       )
15

16         At issue are Community Asset Management LLC's ("CAM") Motion to Dismiss

17   Plaintiffs' First Amended Complaint ("MTD") ("CAM's MTD"); AAM, LLC's ("AAM")

18   Motion to Dismiss Plaintiffs' First Amended Complaint ("AAM's MTD"); Stratford

19   Management's ("Stratford") and Northcott Bellow's ("Northcott Bellow") Motion to Dismiss

20   Plaintiffs' First Amended Complaint ("Stratford's MTD"); Stratford's Motion for Summary

21   Disposition ("Stratford's MSD"); Renaissance Community Partners LLC's ("Renaissance")

22   Motion to Dismiss Plaintiffs' First Amended Complaint ("Renaissance's MTD");

23   Renaissance's Motion for Summary Disposition ("Renaissance's MSD"); Cornerstone

24   Properties, Inc.'s ("Cornerstone") Joinder in AAM's Motion to Dismiss Plaintiffs' First

25   Amended Complaint ("Cornerstone's Joinder in AAM's MTD"); Allen Group Inc. D/B/A

26   Total Property Management's ("Allen Group's") Motion to Dismiss and Joinder in Motions

27   to Dismiss Filed by AAM and CAM ("Allen Group's MTD and Joinder"); Golden Valley

28   Collections ("GVC") and Golden Valley Property Management's ("GVPM") Joinder in

AAM's Motion to Dismiss Plaintiffs' First Amended Complaint ("GVC/GVPM's Joinder in AAM's MTD"); GVC and GVPM's Request for Summary Disposition; Plaintiffs' "Motion Supplement Motion for Leave to Amend First Amended [Doc. 184] [Complaint]" which the Court considers as Plaintiffs' Motion for Leave to File a Second Amended Complaint (Pls.' Mot. to File Second Am. Compl.); and Plaintiffs' Amended Motion to Vacate and Set Aside the Orders of Dismissal ("Pls.' Am. MTV"). (Doc. 35, CAM's MTD; Doc. 56, AAM's MTD; Doc. 111, Stratford's MTD; Doc. 151, Stratford's MSD; Doc. 116, Renaissance's MTD; Doc. 155, Renaissance's MSD; Doc. 63, Cornerstone's Joinder in AAM's MTD; Doc. 170, Allen Group's MTD and Joinder; Doc. 64, GVC and GVPM's Joinder in AAM's MTD; Doc. 146, GVC and GVPM's Request for Summary Disposition; Doc. 205, Pls.' Mot. to File Second Am. Compl.; Doc. 172, Pls.' Am. MTV.)[1]

# I. BACKGROUND

Plaintiffs Christopher Crame and Robert Leatham originally filed their Complaint in the Superior Court in and for Maricopa County, Arizona on September 10, 2012. (Doc. 1, Notice of Removal, Ex. A, Compl.) The case was removed based on federal question and supplemental jurisdiction. (Doc. 1, Notice of Removal ¶ 3.)  The First Amended Complaint ("FAC") was filed on October 26, 2012 and added Patricia A. Thornton as a plaintiff. (Doc. 24, FAC.)  Plaintiffs assert claims based on violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 (Count I), and for wrongful lien in violation of Arizona Revised Statutes ("A.R.S.") § 33-420 (Count II). (FAC ¶¶ 124-42.) The First Amended Complaint includes class action allegations. (*Id*. ¶¶ 1-3, 115-23). The numerous named Defendants generally are described as "Community Association Management Companies" within Arizona who have "contractual relationships with Arizona Homeowners Association

---

[1]  A Clerk's Entry of Default has been filed as to Defendant Cimros, Inc. (Doc. 147, Entry of Default.)

On April 1, 2013, the Court heard oral argument on the Motions to Dismiss Plaintiffs' First Amended Complaint filed by CAM and AAM. (Doc. 185, Min. Entry.) Other motions were pending at that time, and additional motions have since been filed.

1   and Condominium Association entities" and as "third party managing agents of their Arizona

2   Homeowners Association and Condominium clients." (*Id*. ¶¶ 1, 8-9.)

3        **A.**    **Plaintiffs' FDCPA Claim (Count I)**

4        Plaintiffs allege that Defendants are "debt collectors" under 15 U.S.C. § 1692a(6) who

5   violated §§ 1692e and 1692f of the FDCPA by regularly and routinely engaging in the

6   unauthorized practice of law in pursuit of debts on behalf of a third party. (*Id*. ¶¶ 125-26,

7   133.) Plaintiffs allege that Defendants "are not qualified legal assistants/paralegals because

8   their activities in preparing legal documents were not performed under the supervision of an

9   active member of the State Bar of Arizona." (*Id*. ¶ 128.) Plaintiffs assert that Defendants may

10  not be qualified legal document preparers but if Defendants do hold an Arizona document

11  preparer's license, those licenses do not allow them to take the actions described because

12  those activities constitute the unauthorized practice of law. (*Id*. ¶¶ 129, 131.) Plaintiffs allege

13  that Defendants represented that they had legal authority to represent the Homeowners'

14  Association ("HOA") in debt collection practices, including submitting debt collection

15  letters; filing and signing court complaints and pleadings; issuing and recording liens;

16  appearing at tribunals on behalf of third parties; issuing, pursuing, and recording legal

17  judgments; and negotiating the legal rights and interests of third parties with plaintiff class

18  members. (*Id*. ¶ 133.) Plaintiffs allege that Defendants misrepresented the true nature and

19  character of the debts and misrepresented the identity of the Community Association

20  Management Companies to the debtor. (*Id*.) Plaintiffs seek injunctive relief, damages,

21  attorneys' fees and costs with respect to the FDCPA claim. (*Id*. ¶ 134.)

22       **B.**    **Plaintiffs' Wrongful Lien Claim (Count II)**

23       Plaintiffs allege in support of their wrongful lien claim that Defendants, who are not

24  attorneys, charged fees for drafting, signing and recording liens against Plaintiffs' and class

25  members' real property for debts owed to a third party. (*Id*. ¶ 136.) Plaintiffs allege that this

26  activity constitutes the unauthorized practice of law in Arizona and invalidates the lien. (*Id*.)

27  Plaintiffs assert that Defendants acted on behalf of their Association clients in small claims

28  and justice court matters and have been awarded judgments which they recorded in Arizona

county offices and that violates the Arizona constitution and A.R.S. §§ 22-546 and 33-420. (*Id*. ¶¶ 137-42.)

### C.  Plaintiff Crame's Allegations

Plaintiff Crame alleges that he owns a condominium at Los Paseos Condominium Association ("Los Paseos") in Maricopa County, he became delinquent on his condominium assessments, and he filed for bankruptcy protection several years ago. (*Id*. ¶¶ 40, 48-49.) Cornerstone allegedly recorded a Notice of Automatic Lien for Non-Payment of Common Expenses against his Los Paseos condominium in 2009 and charged a fee for its lien services according to account ledger information. (*Id*. ¶¶ 50, 54.) GVPM, who manages Crame's condominium association, and GVC (referred to as "Golden Valley") allegedly sent Crame a demand letter in January 2012, threatening litigation regarding his delinquent assessment account, and assessed expenses against him based on the account ledger. (*Id*. ¶¶ 41-47, 54-60.) Los Paseos, "c/o Golden Valley Collections," allegedly filed a complaint against Crame in Desert Ridge Justice Court in March 2012. (*Id*. ¶¶ 61-62.) Crame alleges that Golden Valley employees prepared and filed court documents and negotiated with him regarding the matter. (*Id*. ¶¶ 62-74.)

### D.  Plaintiff Leatham's Allegations

Plaintiff Leatham alleges that he owns property in a Pinal County, Arizona, planned community and that AAM recorded a notice of lien on February 6, 2012 to secure an alleged $447 debt on behalf of Pecan Creek South Homeowners Association ("Pecan Creek"). (*Id*. ¶¶ 75-78, 83.) Leatham alleges that Pecan Creek's account ledger shows that he was charged lien and demand fees and that the lien notice was prepared and signed by AAM employees on behalf of Pecan Creek. (*Id*. ¶¶ 79-82, 84-86.) Leatham asserts that the matter was turned over to an attorney but that AAM's actions in filing and recording the lien violated Arizona Rules of Court, the FDCPA, and Arizona's wrongful lien statutes. (*Id*. ¶¶ 87-92.)

### E.  Plaintiff Thornton's Allegations

Plaintiff Thornton alleges that she owns a condominium at Lakeside Villas Community Association ("Lakeside Villas") in Maricopa County, that she missed an

assessment payment, and that property manager Defendant Curtis Management & Consulting, LLC ("Curtis Management") proceeded with collection efforts. (*Id.* ¶¶ 95-100.) Curtis Management allegedly recorded a Notice and Claim of Lien in June 2010 signed by one of its employees on behalf of Lakeside Villas and charged $125 and additional fees for its lien services according to account ledger information. (*Id.* ¶¶ 102-06.) Curtis Management allegedly caused a small claims suit to be filed against Thornton in the San Marcos Justice Court in September 2011 and assessed charges for the action based on information in an account ledger. (*Id.* ¶¶ 107-09.) Thornton alleges that a Curtis Management representative signed the court documents, that she was not served with this suit, that the Association received a judgment against her, and that Curtis Management continues its collection efforts even though she makes her assessment payments monthly. (*Id.* ¶¶ 110-13.)[2]

## II.   LEGAL STANDARDS AND ANALYSIS

### A.   Legal Standards Applicable to the Pending Motions

#### 1.   Dismissal under Rules 12(b)(1) and 12(h)(3) of the Federal Rules of Civil Procedure

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may assert the defense of lack of subject matter jurisdiction by motion. Fed. R. Civ. P. 12(b)(1). A facial challenge under Rule 12(b)(1) asserts that the complaint on its face does not allege facts that would invoke federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The facts alleged are presumed true in a facial challenge. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009). Federal courts are courts of limited jurisdiction, and it is presumed that the court lacks subject matter jurisdiction unless the party asserting the claim satisfies its burden of establishing jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

---

[2] The Court has granted Curtis Managements' Motion to Dismiss. (Doc. 134, Feb. 21, 2013, Order.)

"Lack of Article III standing requires dismissal for lack of subject matter jurisdiction under" Rule 12(b)(1). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). The court accepts the material allegations in the complaint as true and the complaint is construed in favor of the complaining party. *Id*. at 1068. Pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure, "[I]f the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

### 2.   Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure

The Federal Rules of Civil Procedure require "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Thus, dismissal for insufficiency of a complaint is proper if the complaint fails to state a claim on its face. *Lucas v. Bechtel Corp.*, 633 F.2d 757, 759 (9th Cir. 1980). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

A Rule 12(b)(6) dismissal for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Conservation Force v. Salazar,* 646 F.3d 1240, 1242 (9th Cir. 2011), *cert. denied*, *Blasquez v. Salazar*, 132 S. Ct. 1762 (2012). In determining whether an asserted claim can be sustained, "[a]ll of the facts alleged in the complaint are presumed true, and the pleadings are construed in the light most favorable to the nonmoving party." *Bates v. Mortg. Elec. Registration Sys., Inc.*, 694 F.3d 1076, 1080 (9th Cir. 2012). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). However, "for a complaint to survive a motion to

- 6 -

dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In other words, the complaint must contain enough factual content "to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556.

### 3. Summary Disposition under Local Rule 7.2(i) of the Local Rules for the District of Arizona

Rule 7.2(i) of the Local Rules for the District of Arizona provides in part that if the opposing party "does not serve and file the required answering memoranda, ...such noncompliance may be deemed a consent to the denial or granting of the motion and the Court may dispose of the motion summarily." LRCiv 7.2(i).

### 4. Leave to File an Amended Complaint

Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). "The power to grant leave to amend, however, is entrusted to the discretion of the district court, which 'determines the propriety of a motion to amend by ascertaining the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility." *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010) (quoting *William O. Gilley Enters. v. Atl. Richfield Co.*, 588 F.3d 659, 669 n.8 (9th Cir. 2009)).

### 5. Relief from a Final Judgment or Order

Rule 60 of the Federal Rules of Civil Procedure allows the court, on "motion and just terms," to relieve a party from a final judgment or order based on grounds of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). A court's decision to deny a Rule 60(b) motion is reviewed for abuse of discretion. *Lal v. California*, 610 F.3d 518, 523 (9th Cir. 2010). However, "any questions of law underlying the . . . decision to deny a Rule 60(b) motion" are reviewed de novo. *Id.* (quotation omitted).

### B. Discussion

1.     **Defendants' Motions to Dismiss the First Amended Complaint or for Summary Disposition**

a.     **Defendants' Motions to Dismiss Based on Lack of Standing**

i.     **CAM's Motion to Dismiss**

CAM contends that the First Amended Complaint should be dismissed under Rules 12(b)(1) and 12(h)(3) because Plaintiffs lack legal standing to pursue a claim against it since Plaintiffs have not asserted any traceable injury to any action by CAM. (CAM's MTD at 4-5.) CAM cites Arizona and federal cases in support of its argument that Plaintiffs lack standing to represent a class of plaintiffs. (CAM's MTD at 6-8.) CAM seeks an award of costs and attorneys' fees. (*Id.* at 9.)

Plaintiffs have filed a response in which they argue that the matter of standing is governed by Arizona law. (Doc. 95, Pls.' Resp. to CAM's MTD at 5-8.) More particularly, Plaintiffs argue the following regarding their FDCPA claim:

> Although the First Amended Complaint asserts that this case is brought against Defendants as a violation of the Fair Debt Collection Practices Act, in reality, that Act cannot be reached unless and until Plaintiffs show that the Defendants violated Arizona substantive law.

(*Id.* at 2.) After discussing various provisions of the FDCPA, Plaintiffs make the following argument:

> The Act never defines what is the practice of law. In other words, while stating that it is improper for a violation of law to occur, it does not attempt to paint a detailed picture of who may, under state law, collect a debt under the Act. In the instant matter, as is stated in the First Amended Complaint, although a violation of the Act is asserted, that violation is based on substantive Arizona law.

(*Id.* at 3.) Plaintiffs thereafter quote paragraphs 126-27 of their First Amended Complaint that support their FDCPA claim and which allege that Defendants were committing the unauthorized practice of law in Arizona by pursuing debts for a third party. (*Id.* at 3; FAC ¶¶ 126-27.)  Plaintiffs cite to a series of recent rulings by the Arizona State Bar and Arizona Supreme Court on whether actions taken by community association management companies amount to the unauthorized practice of law in Arizona. (Pls.' Resp. to CAM's MTD at 4-5; Ex. 1, UPL Advisory Op. No. 12-01 (Mar. 2012) State Bar of Ariz.; Ex. 2, In the Matter of

Amending Ariz. Code of Judicial Administration § 7-208: Legal Document Preparer, Administrative Order No. 2012-85 (Affecting Administrative Order No. 2006-75, Arizona Supreme Court); Ex. 3, In the Matter of Amending Ariz. Code of Judicial Administration § 7-208: Legal Document Preparer, Administrative Order No. 2012-94 (Rescinding Administrative Order No. 2012-85).)[3] Plaintiffs argue that this Court must follow Arizona substantive law regarding supplemental jurisdiction claims and that in certain circumstances, such as in matters of great importance likely to recur, Arizona courts allow a plaintiff to meet standing requirements and represent a class of plaintiffs even though that plaintiff has no direct links to all defendants. (Pls.' Resp. to CAM's MTD at 4-8.)

CAM replies that Arizona substantive law does not apply because this case is not based on diversity jurisdiction and that "'Article III standing must be determined as a threshold matter in every federal case.'" (Doc. 108, CAM's Reply at 3-7 (quoting *United States v. Real Property Located at 5208 Los Franciscos Way, L.A., Cal.*, 385 F.3d 1187, 1191 (9th Cir. 2004)).)

A federal court's jurisdiction is limited to actual cases and controversies. U.S. Const. art. III, § 2. "To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472,  477 (1990). Regardless of the Court's subject matter jurisdiction, Article III standing must be established for each claim, including the wrongful lien claim under Arizona law over which the Court may exercise supplemental jurisdiction. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332,

---

[3] At the time Plaintiffs filed their Response to CAM's Motion to Dismiss, it appears that the issue of whether Arizona certified legal document preparers had authority to file certain lien notice documents was under consideration by the Arizona Supreme Court. (Pls.' Resp. to CAM's MTD at 4-5.) On April 10, 2013, the Arizona Supreme Court issued Administrative Order 2013-39 stating that certified legal document preparers are not prohibited from signing "notices related to condominium or planned community association liens that are created pursuant to A.R.S. § 33-1256 (condominiums) and § 33-1807 (planned communities)." (Doc. 191, AAM's Second Supplemental Mem., Ex. A.)

352 (2006) ("[A] plaintiff must demonstrate standing for each claim he seeks to press."). A plaintiff whose cause of action "'is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury' to establish Article III standing." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1022 (9th Cir. 2004) (quoting *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001-02 (9th Cir. 2001)). The Court may properly address standing before class certification. *Melendres v. Maricopa Cnty.*, No. CV-07-2513-PHX-GMS, 2009 WL 2707241, at *6 (D. Ariz. Aug. 24, 2009) (citing *Easter v. Am. W. Fin.*, 381 F.3d 948, 956, 962 (9th Cir. 2004)). In *Easter*, named plaintiffs lacked standing to sue certain defendants because they could not trace their injuries to those defendants even though the defendants may have acted similarly to other defendants who had caused traceable injuries to the named plaintiffs. *Easter*, 381 F.3d at 962.

The First Amended Complaint contains no factual allegations that CAM caused the named Plaintiffs to suffer an actual injury. CAM's Motion to Dismiss Plaintiffs' First Amended Complaint is therefore granted.

### ii.   Renaissance's Motions

Renaissance similarly contends that the First Amended Complaint should be dismissed under Rule 12(b)(1) because Plaintiffs lack legal standing to pursue a claim against it. (Renaissance's MTD at 2-3.) Renaissance argues that Plaintiffs have not alleged any traceable injury based on its actions. (*Id*.) Renaissance joined in CAM's Motion to Dismiss and additionally argues that Plaintiffs' claims under the FDCPA and for wrongful lien are barred by the one-year limitations period applicable to both claims. (*Id*. at 3.) Renaissance also seeks summary disposition of its Motion to Dismiss, contending that Plaintiffs did not file a response to its Motion to Dismiss and that Renaissance joined in the Amended Motion to Dismiss filed by Vision Community Management LLC, which the Court granted. (Renaissance's MSD; Renaissance's MTD at 2-3; Doc. 135, Feb. 22, 2013, Order.)

Plaintiffs have responded to Renaissance's Motion for Summary Disposition. (Doc. 175, Pls.' Resp. to Renaissance's MSD.) Plaintiffs state that multiple calendaring issues led

1    to their failure to respond to a series of motions to dismiss, including the Motion to Dismiss

2    filed by Renaissance. (*Id*. at 3.) Plaintiffs point out that they have now responded to the

3    overlooked motions to dismiss by submitting their responses with Plaintiffs' Amended

4    Motion to Vacate and Set Aside the Orders of Dismissal filed on March 11, 2013. (*Id*.)

5    However, Plaintiffs submitted no such responses with their Response to Renaissance's

6    Motion for Summary Disposition or with their Amended Motion to Vacate and Set Aside the

7    Orders of Dismissal filed on March 11, 2013. (Pls.' Am. MTV.) Plaintiffs appear to have

8    submitted two proposed responses with Plaintiffs' Response to Amended Motion to Dismiss

9    Plaintiffs' First Amended Complaint filed on March 10, 2013. (Doc. 169, Pls.' Resp. to Am.

10   MTD Pls.' FAC & Ex. 1-2.)

11        To the extent that Plaintiffs are reasserting their argument made in response to CAM's

12   Motion to Dismiss which is similar to the argument set forth in Plaintiffs' Response to

13   Amended Motion to Dismiss Plaintiffs' First Amended Complaint filed on March 10, 2013

14   as applicable to Renaissance, that argument fails for the reasons previously found as to CAM.

15   In any event, Plaintiffs did not file a response memorandum to Renaissance's Motion to

16   Dismiss. The Court deems such noncompliance as a consent to the granting of the motion.

17   LRCiv 7.2(i). Renaissance's Motion for Summary Disposition and its Motion to Dismiss are

18   granted.

19                              **iii.    Stratford's Motions**

20        Stratford and Northcott Bellow filed their Motion to Dismiss Plaintiffs' First

21   Amended Complaint on January 23, 2013. (Stratford's MTD.) On January 11, 2013, the

22   Court filed an Order dismissing Defendant Northcott Bellow based on lack of service of the

23   summons and complaint. (Doc. 106, Jan. 11, 2013, Order.) The pending Motion to Dismiss

24   is considered as to Stratford only. Stratford contends that the First Amended Complaint

25   should be dismissed because Plaintiffs have alleged only that Stratford "is purporting to act

26   on behalf of and for the benefit of . . . Sabino Creek Homeowners Association." (Stratford's

27   MTD at 3-4; FAC ¶ 36.)  Stratford argues that it is not mentioned elsewhere in the First

28   Amended Complaint, Plaintiffs do not allege that Stratford or Sabino Creek caused them

1    injury or damage, and Plaintiffs lack standing to pursue any claim against it. (Stratford's

2    MTD at 3-4.)  Stratford has joined in CAM's Motion to Dismiss. (*Id*. at 4.)

3          Stratford also moves for summary disposition because Plaintiffs failed to file a

4    response to its Motion to Dismiss and because Stratford joined in the Motion to Dismiss filed

5    by Defendant Vision Community Management, LLC, which the Court granted. (Stratford's

6    MSD at 4; Stratford's MTD at 4; Feb. 22, 2013, Order.)

7          Plaintiffs have not filed a response memorandum to Stratford's Motion To Dismiss.

8    The Court deems such noncompliance as a consent to the granting of the motion. LRCiv

9    7.2(i). Stratford's Motion for Summary Disposition and its Motion to Dismiss are granted.

10                        **iv.    Allen Group's Motion**

11          Defendant Allen Group moves to dismiss the First Amended Complaint based on lack

12    of standing, contending that Plaintiffs have not alleged any relationship with it or the

13    associations it manages, nor have Plaintiffs alleged any specific facts or injuries resulting

14    from Allen Group's conduct. (Allen Group's MTD and Joinder at 2.) Allen Group joins in

15    CAM's Motion to Dismiss. (*Id*.) Allen Group also has joined in AAM's Motion to Dismiss

16    and contends it is not a "debt collector" under the FDCPA but restates that it has not been

17    sued by anyone that has a legal relationship with it. (*Id*. at 3.)

18          Plaintiffs have filed a response arguing that Plaintiffs do not lack standing to sue the

19    Allen Group and that the Allen Group is a debt collector under the FDCPA. (Doc. 186, Pls.'

20    Resp. to Allen Group's MTD at 3-4.)

21          Plaintiffs have not alleged any facts in the First Amended Complaint showing that the

22    Allen Group caused any named Plaintiff harm or injury. Allen Group's Motion to Dismiss

23    is granted.

24                        **b.    AAM's Motion to Dismiss**

25          AAM moves to dismiss Plaintiffs' First Amended Complaint under Rule 12(b)(6).

26    (AAM's MTD at 1; Doc. 136, AAM's Reply Mem. in Supp. of  MTD Pls.' FAC ("AAM's

27    Reply") at 2-3.)

28                        **i.  Dismissal of Leatham's FDCPA claim**

1    AAM argues that Plaintiffs' FDCPA claim based on Leatham's allegations should be
2    dismissed because AAM is a management company and not a "debt collector." (AAM's
3    MTD at 4.) AAM contends it was acting under a fiduciary obligation to the HOA and its
4    collection activities were "incidental to" that fiduciary relationship, making it exempt from
5    the FDCPA. (*Id*. at 4-8.) AAM states that it employs Certified Legal Document Preparers to
6    prepare and record notices of liens against delinquent homeowners. (*Id*. at 2.) AAM argues
7    that Leatham's debts were not in default when AAM obtained them. (*Id*. at 8-9.) AAM seeks
8    its attorneys' fees and costs under the FDCPA, claiming that any reasonable search of
9    FDCPA case law would have revealed that property management companies are not debt
10   collectors under the FDCPA and that it was unreasonable for Plaintiffs to seek damages
11   dating back six years regarding a class of plaintiffs when the FDCPA has a one-year
12   limitations period. (*Id*. at 9-10.)

13   Plaintiffs respond that AAM wrongfully engaged in the practice of law in Arizona and
14   that AAM's fiduciary duties do not include providing illegal legal services. (Doc. 130, Pls.'
15   Resp. to AAM's MTD at 2-9.) Plaintiffs admit that AAM "could well have been acting
16   within its capacity as a fiduciary when it sent letters to homeowners," but "it stepped beyond
17   that fiduciary role and into the role of an illegal debt collector when it began to take illegal
18   action against homeowners." (*Id*. at 6.) Plaintiffs contend that AAM filed suit using the
19   names of HOAs as plaintiffs to collect legal fees AAM was owed and Defendants are "debt
20   collectors" because they sued under false names, that is, the names of the HOA. (*Id*. at 9-12.)
21   Plaintiffs argue that AAM "became a debt collector when it started acting as an attorney,
22   calling its employees paralegals, and when it formed a Legal Department, and contracted to
23   collect debts." (*Id*. at 9.)

24   The FDCPA defines a debt collector as "any person . . . who regularly collects or
25   attempts to collect . . . debts owed or due or asserted to be owed or due another." 15 U.S.C.
26   § 1692a(6). Excepted from the term "debt collector" is "any person collecting or attempting
27   to collect any debt owed or due or asserted to be owed or due another to the extent such
28   activity (i) is incidental to a bona fide fiduciary obligation." 15 U.S.C. § 1692a(6)(F)(i). To

1   come within this exception, (1) "the entity must have a 'fiduciary obligation,'" and (2) "the

2   entity's collection activity must be 'incidental to' its 'fiduciary obligation.'" *Rowe v. Educ.*

3   *Credit Mgmt. Corp.*, 559 F.3d 1028, 1032 (9th Cir. 2009).

4        Arizona law provides that associations for condominiums and planned communities

5   may be established. A.R.S. §§ 33-1241 & 1802(1). Condominium associations may "collect

6   assessments for common expenses from unit owners." A.R.S. § 33-1242(A)(2). With respect

7   to condominiums and planned communities, "the association has a lien on a unit for any

8   assessment levied against that unit from the time the assessment becomes due." A.R.S. § 33-

9   1256(A) (condominiums), A.R.S. § 33-1807(A) (planned communities). Here, Plaintiffs

10  allege that all Defendants are "managing agents" in the "business, trade, or commerce of

11  managing the operations of their HOA and Condominium clients." (FAC ¶¶ 9, 11.)

12       AAM's management agreements show that it has been Pecan Creek's managing agent

13  since 2006 and it has been responsible for collecting homeowner assessments since that date.

14  (AAM's MTD at 9; Ex. A, Homeowners Cmty. Mgmt. Agreement (Jan. 1, 2012) ¶ 2.4; Ex.

15  B, Homeowners Cmty. Mgmt. Agreement (July 1, 2010)  ¶ 2.4; Ex. C, Homeowners Prop.

16  Mgmt. Agreement (Feb. 26, 2008) ¶ 2(e); Ex. D, Homeowners Prop. Mgmt. Agreement (May

17  25, 2006) ¶ 2(e).)[4] AAM's responsibilities also include using Pecan Creek's funds to pay

18  utilities, managing vendor relationships, keeping full detailed accounts of the funds it

19  handles, keeping Pecan Creek's funds separate from its own, holding Pecan Creek's revenue

20  in a trust account, and preparing a budget and annual accounting. (AAM's MTD, Ex. A,

21  Homeowners Cmty. Mgmt. Agreement (Jan. 1, 2012) ¶¶ 2.2, 2.5, 2.6, 2.7, 2.8, 2.9.) AAM

22  also is obligated to update and maintain the property. (*Id*. ¶ 2.11.)

23

24

25       [4] The Court may take judicial notice of these agreements without converting AAM's
26  Motion to Dismiss into a motion for summary judgment because the authenticity of the
    agreements has not been contested and Plaintiffs' First Amended Complaint includes
27  allegations related to them. (FAC ¶¶ 11, 13.) *Lee v. City of Los Angeles*, 250 F.3d 668, 688
28  (9th Cir. 2002).

1    "[A]n agency relationship is a fiduciary relationship in which the agent acts on the

2    principal's behalf." *Inter "K" N.V. v. UPS Supply Chain Solutions, Inc.*, No. 2 CA-CV 2011-

3    0026, 2011 WL 5826046, at *4 (Ariz. Ct. App. Nov. 18, 2011) (citing Restatement (Third)

4    Agency § 1.01 (2006)). AAM, as Pecan Creek's managing agent, was in a fiduciary

5    relationship. A property management company for a homeowner's association that performs

6    responsibilities like AAM's collects unpaid assessments "incidental" to its "bona fide

7    fiduciary obligation" to the association. In other words, AAM's assessment collection

8    activity is not central to, or the primary purpose, of its broad range of responsibilities under

9    its management agreement with Pecan Creek. *Harris v. Liberty Cmty. Mgmt., Inc.*, 702 F.3d

10   1298, 1302-03 (11th Cir. 2012). AAM therefore is not a "debt collector" under the FDCPA

11   for purposes of its assessment collection activity on behalf of Pecan Creek. *Id.*

12          Plaintiffs allege in the First Amended Complaint that "Defendants were regularly and

13   routinely committing the unauthorized practice of law in pursuit of alleged debts for a third

14   party." (FAC ¶ 126.) However, as AAM points out, allegations based on the unauthorized

15   practice of law do not assert a cognizable FDCPA claim. (AAM's Reply at 7.) Courts "have

16   concluded that unauthorized practice of law claims are not cognizable under the FDCPA."

17   *Cohen v. Wolpoff & Abramson, LLP*, Civil Action No. 08-1084 (SRC), 2008 WL 4513569,

18   at *8 (D.N.J. Oct. 2, 2008) (collecting cases); *see also Eddis v. Midland Funding, L.L.C.*,

19   Civil No. 11-3923 (JBS/AMD), 2012 WL 664812, at *10 (D.N.J. Feb. 28, 2012) ("Plaintiffs'

20   claims for violations of the Rules of Professional Conduct do not state a cause of action for

21   use of unfair and unconscionable means to collect debt or misrepresentations in violation of

22   the FDCPA.").[5] Moreover, Plaintiffs admit in the First Amended Complaint that AAM "did

23

24          [5] Pursuant to 15 U.S.C. § 1692e, "[a] debt collector may not use any false, deceptive,
25   or misleading representation or means in connection with the collection of any debt."
     Conduct that violates this section includes "[t]he false representation or implication that any
26   individual is an attorney or that any communication is from an attorney." § 1692e(3).

27          Under 15 U.S.C. § 1692f, a debt collector is prohibited from using any "unfair or
28   unconscionable means to collect or attempt to collect any debt."

1  not pursue Leatham in a small claims or justice court action, but instead turned the file over
2  to an attorney." (FAC ¶ 87.)

3          Plaintiffs argue that "[t]he debts upon which the Defendants sued homeowners were,
4  by their very nature, in default" because otherwise "Defendants could not have illegally filed
5  suit against the homeowners." (Pls.' Resp. to AAM's MTD at 12.) Plaintiffs contend that the
6  amount owed by homeowners was in default when AAM prepared the notice of lien or filed
7  suit. (*Id*. at 14.) Plaintiffs refer to a ledger of Leatham's HOA account as showing that
8  Leatham's delinquent assessments accrued in 2011. (*Id*. at 13-14.)[6]

9          The FDCPA does not apply to persons who attempt to collect a debt "which was not
10 in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). AAM
11 has been Pecan Creek's managing agent since 2006. Pursuant to its management agreement,
12 AAM handles the billing of assessments as they become due, not after they are in default.
13 (AAM's MTD at 9; Ex. A, Homeowners Cmty. Mgmt. Agreement (Jan. 1, 2012) ¶ 2.4.)
14 While AAM allegedly recorded a notice of lien as to Leatham on February 6, 2012, Plaintiffs
15 assert in their briefing that Leatham became delinquent on his assessment fees in October
16 2011. (FAC ¶ 76; Pls.' Resp. to AAM's MTD at 13.) Plaintiffs have not alleged in the First
17 Amended Complaint that Leatham's debt was in default at the time AAM became
18 responsible for collecting the assessment. (FAC ¶¶ 75-86.)

19          Finally, under the FDCPA, a "debt collector" "includes any creditor, who in the
20 process of collecting his own debts, uses any name other than his own which would indicate
21 that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6).
22 While Plaintiffs allege that Leatham's account ledger shows that AAM charged Leatham a
23 lien and demand fee, Plaintiffs have not alleged in the First Amended Complaint that AAM

24  ─────────────────

25          [6] Plaintiffs refer to the ledger as Exhibit 8 attached to their Response. (Pls.' Resp. to
    AAM's MTD at 13.)  However, Plaintiffs' Response filed on February 15, 2013 and the First
26  Amended Complaint do not contain any attachments. (Pls.' Resp. to AAM's MTD; FAC.)
    Plaintiffs' Response to AAM's Motion to Dismiss filed on January 29, 2013 was ordered
27  stricken. (Doc. 127, Feb. 8, 2013, Order.) Plaintiffs' stricken response included attachments.

28

1   was a creditor in the process of collecting its own debts using a name other than its own.

2   AAM's management agreement with Pecan Creek shows Pecan Creek's acknowledgment

3   that AAM charges demand and lien fees. (AAM's MTD, Ex. A, Homeowners Cmty. Mgmt.

4   Agreement (Jan. 1, 2012) ¶¶ 4.9, 4.10.) Pursuant to A.R.S. § 33-1807(A), late payment fees,

5   collection costs and attorneys' fees may be included in the association's lien for assessments

6   under certain circumstances. Listing an amount due in an account ledger or requesting costs

7   and fees in a filed court action are not demands to the debtor. Plaintiffs' allegations do not

8   assert a violation of the FDCPA. (FAC ¶¶ 84, 86.)[7]

9       Plaintiffs have failed to assert a cognizable FDCPA claim as to Leatham against

10  AAM. AAM's Motion to Dismiss the FDCPA claim is granted.

11                  **ii.  Leatham's Wrongful Lien claim**

12      AAM contends that it did not violate Arizona's notice of lien statute because Plaintiffs

13  have not alleged in the First Amended Complaint that AAM purported to claim an interest

14  in the property and because preparing, recording, and signing a notice of lien does not

15  constitute the unauthorized practice of law. (AAM's MTD at 11-15.) AAM argues that even

16  if such activity  is the unauthorized practice of law, that activity does not render the notices

17  invalid. (*Id*. at 15.) Plaintiffs argue that Defendants practiced law illegally when they

18  recorded liens and judgments that included attorneys' fees and costs when Defendants knew

19  they were not attorneys. (Pls. Resp. at 14-15.) For the reasons stated below, the Court has

20  declined to exercise supplemental jurisdiction over Plaintiffs' state law wrongful lien claim.

21              **c.       GVC and GVPM's Joinder in AAM's Motion to Dismiss**

22      GVC and GVPM have joined in AAM's Motion to Dismiss the First Amended

23  Complaint. (GVC/GVPM's Joinder in AAM's MTD at 1.)  GVC and GVPM contend that

24  their collection activities regarding Plaintiff Crame were incidental to a bona fide fiduciary

25  

26      [7] A violation of 15 U.S.C. § 1692f applicable to a debt collector includes "[t]he

27  collection of any amount (including any interest, fee, charge, or expense incidental to the
    principal obligation) unless such amount is expressly authorized by the agreement creating

28  the debt or permitted by law." § 1692f(1).

1   relationship with Los Paseos Condominium Association and they therefore are not "debt
2   collector(s)" under the FDCPA. (*Id.* at 3-5.) Plaintiffs acknowledge that GVC and GVPM
3   are legally different in name only. (FAC ¶¶ 22-23, 41-47.) GVC and GVPM have filed a
4   Reply that includes a Request for Summary Disposition. (Doc. 146, GVC and GVPM's
5   Request for Summary Disposition.) These Defendants contend that Plaintiffs' Response to
6   AAM's Motion to Dismiss did not address the arguments they made in their Joinder in
7   AAM's Motion to Dismiss and Plaintiffs have failed to timely respond to their Joinder. (*Id.*
8   at 2-3.)

9       Plaintiffs have not filed a response memorandum to GVC and GVPM's Joinder in
10  AAM's Motion to Dismiss. Plaintiffs' arguments asserted in their response to AAM's Motion
11  to Dismiss did not address the substantive arguments made by GVC and GVPM in their
12  Joinder in AAM's Motion to Dismiss. Plaintiffs simply referred to their allegations in the
13  First Amended Complaint as to GVC and GVPM. (Pls.' Resp. To AAM's MTD at 14; FAC
14  ¶¶ 55-64.) The Court deems Plaintiffs' noncompliance as a consent to the granting of GVC
15  and GVPM's Joinder Motion to Dismiss Plaintiffs' First Amended Complaint. LRCiv 7.2(i).
16  GVC and GVPM's Request for Summary Disposition and their Joinder in AAM's Motion
17  to Dismiss are granted.

18               **d.  Cornerstone's Joinder in AAM's Motion to Dismiss**

19      Cornerstone has joined in AAM's Motion to Dismiss and contends that it is a property
20  management company with fiduciary obligations to its clients. (Cornerstone's Joinder in
21  AAM's MTD at 2.) Cornerstone argues that it prepares and records Notices of Automatic
22  Liens regarding delinquent association dues and that it and its employee Michael Roberson
23  are Arizona Certified Legal Document Preparers operating under certification numbers. (*Id.*;
24  Doc. 152, Cornerstone's Am. Separate Reply at 4-5.) Cornerstone admits that in 2009 it
25  recorded a Reminder Notice with respect to unpaid common expenses relating to Crame's
26  ownership of real property in Los Paseos before it stopped managing Los Paseos in
27  September 2010. (Cornerstone's Joinder in AAM's MTD at 2; Cornerstone's Am. Separate
28  Reply at 1, 3.) Cornerstone contends that it is not a "debt collector" under the FDCPA, it has

not violated Arizona's wrongful lien statute, and it has not engaged in the unauthorized practice of law. (Cornerstone's Joinder in AAM's MTD at 3.) Cornerstone seeks an award of attorneys' fees and costs under the FDCPA. (*Id*. at 3.)

Plaintiffs have not filed a response memorandum to Cornerstone's Joinder in AAM's Motion to Dismiss. The Court deems Plaintiffs' noncompliance as a consent to the granting of Cornerstone's request for dismissal of the First Amended Complaint. LRCiv 7.2(i). Cornerstone's Joinder in AAM's Motion to Dismiss is granted.

### 2.     Plaintiffs' Motion Supplement Motion for Leave to Amend First Amended [Doc. 184][Complaint]

On March 29, 2013, Plaintiffs filed a Motion for Leave to File Amended Pleading in which they sought to file a second amended complaint naming additional plaintiffs and adding state law claims. (Doc. 184, Pls.' Mot. to Am. Pleading.) Responses opposing Plaintiffs' Motion were filed by Defendants AAM, Curtis Management, Renaissance, Morrison Group, Inc. ("Morrison Group"), Dan Peterson Property Management Company LLC ("Dan Peterson Management"), CAM, Management Trust, Inc. ("Management Trust"), Planned Development Services, Inc. ("Planned Development"), Stratford, Brown Community Management, Inc., ("Brown Management"), Ogden & Company, Inc. West ("Ogden"), Capital Consultants Management Corporation ("Capital Consultants"), K Management Services, Inc. ("K Management"), City Property Management Company ("City Property"), EPMI, Inc. ("EPMI"), and Allen Group. (Doc. 192, AAM's Resp.; Doc. 193, Curtis Management's Resp.; Doc. 194, Renaissance and Morrison Group's Joinder Resp.; Doc. 195, Dan Peterson Management's Joinder Resp.; Doc. 196, CAM's Joinder Resp.; Doc. 197, Management Trust's Resp.; Doc. 198, Planned Development's Resp.; Doc. 199, Stratford's Joinder Resp.; Doc. 200, Brown Management's Resp. and Joinder; Doc. 201, Ogden and Capital Consultants' Resp. and Joinder; and Doc. 202, K Management, City Property, EPMI and Allen Group's Resp. and Joinder.)

On May 17, 2013, Plaintiffs filed a "Motion Supplement Motion for Leave to Amend First Amended [Doc. 184] [Complaint]," which the Court now considers as a Motion for

1    Leave to File a Second Amended Complaint. (Pls.' Mot. to File Second Am. Compl.)

2    Plaintiffs have submitted their proposed Second Amended Complaint ("Proposed SAC") as

3    an attachment to their Motion. (*Id.*, Ex. A, Proposed SAC.) Responses opposing Plaintiffs'

4    Motion for Leave to File Second Amended Complaint were filed by "Certain Defendants,"

5    CAM and 360 Management, LLC ("360 Management"). (Doc. 206, Certain Defs.' Resp. to

6    Pls.' Mot. Supplement Mot.; Doc. 208, CAM's Joinder Resp. to Pls.' Supplement Mot.; Doc.

7    210, 360 Management's Resp. to Pls.' Mot. for Supplement.)

8         Plaintiffs' proposed Second Amended Complaint reasserts the claims of the First

9    Amended Complaint's previously-named Plaintiffs Crame, Leatham and Thornton, adds

10   fourteen new plaintiffs and adds state law claims for unjust enrichment, consumer fraud and

11   negligent misrepresentation. (Proposed SAC ¶¶ 51-371, 401-17.)[8] Plaintiffs filed the

12   "supplement" Motion to Amend to include another plaintiff, in addition to the plaintiffs

13   named in their previous request to file an amended pleading, but whose cause of action

14   allegedly accrued after Plaintiffs filed their earlier Motion to Amend. (Pls.' Mot. to File

15   Second Am. Compl. at 3.)

16        The proposed Second Amended Complaint contains allegations as to Crame, Leatham

17   and Thornton identical to those asserted in the First Amended Complaint. (*Compare* FAC

18   ¶¶ 40-113, *with* Proposed SAC ¶¶ 51-124.) As for the newly named plaintiffs, the proposed

19   Second Amended Complaint contains the following general allegations common to all such

20   new plaintiffs: the plaintiffs became delinquent in their HOA assessments; employees of the

21   named management companies were not licensed Arizona lawyers but acted on behalf of the

22   HOAs and sought to collect the delinquent assessments and impermissibly added collection

23   fees and other costs; liens were filed or recorded on the plaintiffs' real property; the plaintiffs

24   in some instances were sued in justice or small claims courts and judgments were entered

25

26        [8] The proposed Second Amended Complaint lists Christopher Ball as an added
27   plaintiff and identifies him as a member of the Villa Capri HOA. (Proposed SAC ¶ 14.) The
     proposed Second Amended Complaint contains no further allegations as to Christopher Ball.
28

1    against them; and representatives of the management companies continued in their efforts

2    to collect the outstanding HOA assessments, fees and costs. (Proposed SAC ¶¶ 125-371.) The

3    proposed Second Amended Complaint contains the same allegations in support of the

4    FDCPA claim in Count I as previously asserted in the First Amended Complaint, that is,

5    allegations that Defendants impermissibly engaged in the unauthorized practice of law in

6    Arizona. (*Compare* FAC ¶¶ 125-34, *with* Proposed SAC ¶¶ 383-92.)

7         AAM contends that the proposed Second Amended Complaint does not address any

8    of the deficiencies of the FDCPA claim asserted in the First Amended Complaint that AAM

9    argued in its Motion to Dismiss. (Doc. 192, AAM's Resp. at 1, 3, 5.) The Court agrees.

10   Plaintiffs' allegations in the proposed Second Amended Complaint relevant to Leatham are

11   deficient for the reasons previously found in this Order as to the First Amended Complaint.

12   Plaintiffs' FDCPA claim as to Leatham is foreclosed because Defendant AAM is not a debt

13   collector, an FDCPA claim based on the unauthorized practice of law does not state a

14   cognizable claim, and Leatham's debt was not in default when AAM became responsible for

15   collecting it..

16        Plaintiffs' FDCPA claim as to Plaintiff Crame was extinguished based on the Court's

17   ruling in this Order granting GVC, GVPM, and Cornerstone summary dismissal because

18   Plaintiffs failed to respond to these Defendants' dispositive joinder motions. Similarly, the

19   FDCPA claim as to Plaintiff Thornton was extinguished based on the Court's previous ruling

20   granting Defendant Curtis Management's Motion to Dismiss. Curtis Management now

21   contends that Thornton's claim against it was previously dismissed and the reassertion of that

22   claim is futile. (Doc. 193, Curtis Management's Resp at 3-4.)

23        The allegations in the proposed Second Amended Complaint relevant to Crame,

24   Thornton, and the newly named plaintiffs must be examined to determine if they are

25   sufficient to assert a claim based on a violation of the FDCPA. Defendants contend that the

26   FDCPA claims asserted in the proposed Second Amended Complaint are barred by the

27   applicable one year limitations period. (Doc. 197, Management Trust's  Resp. at 3-4; Doc.

28   198, Planned Development's Resp. at 3; Doc. 200, Brown Management's Resp. and Joinder

at 2; Doc. 201, Ogden and Capital Consultants' Resp. and Joinder at 2-3; Doc. 202, K
Management and City Property's Resp. at 2; Doc. 210, 360 Management's Resp. to Pls.'
Mot. for Supplement at 5.) Other Defendants contend that the proposed Second Amended
Complaint contains no factual allegations against them even though they are named as
Defendants. (Doc. 194, Renaissance and Morrison Group's Joinder Resp. at 1; Doc. 195, Dan
Peterson Management's Joinder Resp. at 1-2; Doc. 196, CAM's Joinder Resp. at 2; Doc. 199,
Stratford's Joinder Resp. at 1-2; Doc. 201, Ogden's Resp. and Joinder at 2; Doc. 202, EPMI
and Allen Group's Resp. and Joinder at 2; Doc. 206, Certain Defs.' Resp. to Pls.' Mot.
Supplement Mot. at 1-2.)

Pursuant to 15 U.S.C. § 1692k(d), "[a]n action to enforce any liability created by this
subchapter may be brought . . . within one year from the date on which the violation occurs."
The Ninth Circuit has held that the FDCPA's limitations period "begins to run when the
plaintiff knows or has reason to know of the injury which is the basis of the action." *Mangum
v. Action Collection Servs., Inc.*, 575 F.3d 935, 940 (9th Cir. 2009). The Ninth Circuit also
has held that where the alleged violation is the filing of a lawsuit, the limitations period
begins to run on the date that the complaint is filed. *Naas v. Stolman*, 130 F.3d 892, 893 (9th
Cir. 1997).

The proposed Second Amended Complaint asserts the following allegations:

- Crame became delinquent in his assessments owed to Los Paseos and filed for
  bankruptcy, Cornerstone recorded a notice of lien against Crame's
  condominium in 2009, Crame's account ledger shows that Cornerstone added
  charges for lien preparation in October 2009, GVC sent Crame a demand letter
  in January 2012, Crame's account ledger shows additional charges by GVC,
  Los Paseos filed suit in justice court against Crame, and representatives of
  GVC, not Los Paseos, negotiated with Crame about the outstanding debt
  (Proposed SAC ¶¶ 51-85);

- Thornton missed an assessment payment due to Lakeside Villas, Curtis
  Management recorded a Notice and Claim of Lien on June 15, 2010,

1    Thornton's account ledger shows charges for lien services, in September 2011
2    Curtis Management caused a small claims lawsuit to be filed against Thornton
3    and its representative signed the court documents, the Association received a
4    judgment against Thornton and Curtis Management has continued collection
5    efforts against Thornton (*Id*. ¶¶ 106-24);

6    • Brown Management recorded a lien against real property owned by Treven
7        and Kathy Nuttall on or about December 23, 2009, the lien contained
8        inaccurate information about the amount of the lien, Brown Management's
9        representatives attempted to collect the amount owed, and in January 2012, the
10       Deer Valley Homeowners Association filed suit against the Nuttalls in
11       Maricopa County Justice Court  (*Id*. ¶¶ 128-47);

12   • Joan Risner was late paying her assessment, Kinney Management recorded a
13       lien in 2007 against the real property Risner owned regarding the delinquent
14       assessment, the lien notice contained false information about the amount owed
15       based on amounts posted in an account ledger, the Rancho Gabriela
16       Homeowners Association filed suit in 2008 and Kinney Management filed suit
17       in 2009 to collect unpaid homeowner association fees and additional costs, and
18       in September 2012 a Kinney Management officer sent Risner a demand letter
19       on behalf of the Association but describing himself as an attorney (*Id*. ¶¶ 148-
20       90);

21   • Kachina Management caused a lien to be recorded in 2007 against real
22       property owned by plaintiffs Clinton and Brittany Zimmerman, the Castle
23       Community Association filed suit in 2008 to collect the amount owed
24       including collection costs but the paperwork may have been signed by a
25       Kachina Management representative, an application for default was filed, and
26       a Kachina Management representative attended court appearances on behalf
27       of the Association (*Id*. ¶¶ 192-209);

28

1   •    Waterworks Condominium Association ("Waterworks") recorded a lien in

2        January 2011 against real property owned by plaintiffs Adam and Michelle

3        Remis for delinquent assessments, the lien was signed by a representative of

4        Vision Community Management ("Vision"), and Vision filed suit about a

5        month later to collect the assessments and additional fees and later obtained a

6        default judgment; AAM recorded a lien in November 2010 against the Remis'

7        real property for delinquent assessments and Carefree Crossing Homeowners

8        Association filed suit shortly thereafter to collect the assessments and

9        additional fees but AAM controlled the matter and represented the HOA (*Id.*

10       ¶¶ 211, 220-44, 249-65);

11  •    The Management Trust recorded a lien in May 2011 against real property

12       owned by plaintiff Garret Warner (Towne Square, Desert Village Homeowners

13       Association) who was delinquent in the payment of his assessments and a

14       ledger shows that a fee was charged to prepare, sign and file the lien (*Id.* ¶¶

15       266-74);

16  •    The Management Trust recorded a lien in August 2011 against real property

17       owned by plaintiffs Michael and Heather Jeziorski (Aspen Springs

18       Condominium Association) who were late in paying their association

19       assessments and a ledger shows the management company charged a fee to

20       prepare, sign and file the lien (*Id.* ¶¶ 276-98);

21  •    City Property recorded a lien in November 2010 against real property owned

22       by plaintiffs Jadwiga Lebiedzinska and Jozef Kakareko (Harbor Shores

23       Community Association) who were delinquent in paying their association

24       assessments; City Property sent plaintiffs a demand letter in July 2011 and the

25       Association filed suit on an unidentified date to collect the delinquent amounts

26       before turning the matter over to an attorney; the court documents may have

27       been prepared and signed by a City Property representative (*Id.* ¶¶ 292-311);

28

1      •      Johnson Ranch Community Association through Capital Consultants

2             Management recorded a lien in 2010 against real property owned by the

3             plaintiff Estate of James L. Reese who was late in paying association fees and

4             a ledger shows that the management company charged a fee to prepare, sign,

5             and file the lien (*Id.* ¶¶ 319-30);

6      •      Planned Development Services recorded a lien in 2010 against real property

7             owned by plaintiff Radenko Milic (Turf Village Owners Association) for late

8             payment of association fees and the lien secured the payment of assessments

9             and other charges described as "interest, late charges, costs, action agency

10            fees, and reasonable attorneys' fees" which were not posted to Milic's account

11            (*Id.* ¶¶ 332-47); and

12     •      Dunlap Condominiums, Inc., a/k/a Dunlap Community Association, recorded

13            a lien in September 2010 against real property owned by plaintiff Alberto

14            Pererya; the lien indicated that 360 Property Management was collecting a

15            debt; a ledger prepared by 360 Property Management shows a fee was charged

16            for the preparation, execution, and recording of the document; in April 2013,

17            a representative of 360 Property Management who is not a licensed attorney

18            prepared and signed a complaint against Pererya in Maricopa County Justice

19            Court; and a ledger shows that Pererya was charged a lien fee, collection fee

20            and small claims filing fee (*Id.* ¶¶ 350-70.)

21            The allegations in the proposed Second Amended Complaint relevant to the FDCPA

22     claims of Crame, Thornton, and the newly added plaintiffs are based on an invalid legal

23     theory; the unauthorized practice of law is not a cognizable basis for an FDCPA claim.

24     Plaintiffs do not allege in the proposed Second Amended Complaint that the Arizona

25     Supreme Court has found that any act by Defendants in collecting delinquent assessment fees

26     or recording notices of liens constitutes the unauthorized practice of law. *See Poirier v. Alco*

27     *Collections*, 107 F.3d 347, 350 (5th Cir. 1997) ("As the Louisiana courts have found Alco's

28     actions in filing suit against Poirier constituted the unauthorized practice of law, there is no

longer any dispute that Alco violated [15 U.S.C. § 1692e(5)] of the FDCPA when it took 'action that cannot legally be taken' against Poirier."). Moreover, any cause of action based on the FDCPA commenced on the date that the lien was recorded as to the plaintiffs' real property because that is the date the plaintiffs knew or had reason to know of the alleged harm. Plaintiffs throughout the proposed Second Amended Complaint cite to the recording of the notices of liens and charges related to the liens as the definitive actions showing an alleged abusive debt collection practices. The original Complaint was filed on September 10, 2012 but the notices of liens were recorded more than one year prior to the Complaint's filing date (Crame, 2009; Thornton, June 15, 2010; the Nuttalls, Dec. 23, 2009; Risner, 2007; the Zimmermans, 2007; the Remis plaintiffs, Nov. 2010 and Jan. 2011; Warner, May 2011; the Jeziorskis, Aug. 2011; Lebiedzinska and Kakareko, Nov. 2010; Reese Estate, 2010; Milic, 2010; Pereyra, Sept. 2010). The FDCPA claims of Crame, Thornton, and the newly-added plaintiffs are time-barred.

The allegations in Plaintiffs' proposed Second Amended Complaint in support of the FDCPA claim do not cure the deficiencies of the First Amended Complaint as to that claim. Any attempt by Plaintiffs to file the proposed Second Amended Complaint as to the FDCPA claim would be futile. *See Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile."). Plaintiffs' Motion for Leave to File a Second Amended Complaint is denied as to the FDCPA claim.

### 3.    Plaintiffs' Amended Motion to Vacate and Set Aside the Orders of Dismissal

The Court has entered Orders dismissing certain Defendants from this case. (Doc. 134, Feb. 21, 2013 Order; Doc. 135, Feb. 22, 2013, Order.) The Court granted Defendant Curtis Management's Motion to Dismiss Plaintiffs' First Amended Complaint because Plaintiffs failed to serve and file a responsive memorandum. (Feb. 21, 2013, Order.) The Court granted the other Defendants' Motion for Summary Disposition and Amended Motion to Dismiss

1    Plaintiffs' First Amended Complaint because Plaintiffs failed to file a responsive

2    memorandum as to either of Defendants' Motions. (Feb. 22, 2013, Order.)

3          Plaintiffs have moved to vacate and set aside the February 21, 2013, Order of

4    dismissal on the ground that Plaintiffs' failure to timely respond was due to excusable neglect

5    under Rule 60(b)(1). (Pls.'Am. MTV at 3, 9.) Plaintiffs state that they were confused by the

6    joinders that were filed with the motions to dismiss and the response dates were not properly

7    calendared by Plaintiffs' counsel. (*Id*. at 4.) Plaintiffs state that they "have attached proposed

8    forms of responses to the pending Motions to Dismiss as Exhibits A and B respectively." (*Id*.

9    at 3.) Defendants have filed responses opposing Plaintiffs' Amended Motion to Vacate and

10   Set Aside the Orders of Dismissal. (Doc. 178, Curtis Management's Resp.; Doc. 179, Defs.'

11   Resp.; Doc. 180, Brown Management's Joinder; Doc. 183, Renaissance and Morrison

12   Group's Joinder; Doc. 190, Stratford's Joinder.)

13         "Excusable neglect" includes "situations in which the failure to comply with a filing

14   deadline is attributable to negligence" and includes "omissions caused by carelessness."

15   *Lemoge v. United States*, 587 F.3d 1188, 1192 (9th Cir. 2009). In considering whether a

16   party's failure to meet a deadline amounts to "excusable neglect," the court considers "(1)

17   the danger of prejudice to the opposing party; (2) the length of the delay and its potential

18   impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in

19   good faith." *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1261 (9th Cir. 2010).

20         The Court has considered Plaintiffs' Amended Motion to Vacate and Set Aside the

21   Orders of Dismissal in light of the relevant factors. Even if the Court were to find excusable

22   neglect, that is insufficient reason to vacate the orders of dismissal.

23         Plaintiffs refer only to the February 21, 2013 Order concerning Curtis Management

24   as the Order they seek to vacate, yet Plaintiffs mention being confused by the "Standing

25   Motion" filed by numerous other Defendants on December 7, 2012. (Pls.' Am. MTV at 3-4

26   (referring to Doc. 57 & 59).) Plaintiffs state that they have attached the proposed forms of

27   responses to the motions to dismiss as Exhibits A and B, but there are no attachments to

28   Plaintiffs' Amended Motion to Vacate and Set Aside the Orders of Dismissal. (Pls. Am.

1  MTV at 3.) Plaintiffs seem to state that their Amended Motion to Vacate and Set Aside the

2  Orders of Dismissal "is an amended version of a previously filed Motion that was not

3  properly filed on the ECF system [See Document #169]." (*Id*. at 3.)

4          The referenced "Document #169" is not a motion but is "Plaintiffs' Response to

5  Amended Motion to Dismiss Plaintiffs' First Amended Complaint." (Doc. 169, Pls.' Resp.

6  to Am. MTD Pls.' FAC.) This appears to be a response to the Amended Motion to Dismiss

7  filed by the numerous "Standing Defendants." (*Id*.) Documents attached to it include

8  "Plaintiffs' Response to Defendant Curtis Management and Consulting, LLC's Motion to

9  Dismiss" and another copy of "Plaintiffs' Response to Amended Motion to Dismiss

10  Plaintiffs' First Amended Complaint." (Doc. 169-1 & Doc. 169-2.) In "Plaintiffs' Response

11  to Amended Motion to Dismiss Plaintiffs' First Amended Complaint," Plaintiffs emphasize

12  that the FDCPA "and the numerous violations of all of the Defendants, cannot be reached

13  unless and until Plaintiffs show that the Defendants violated Arizona substantive law." (Doc.

14  169, Pls.' Resp. to Am. MTD Pls.' FAC at 3.)  In "Plaintiffs' Response to Defendant Curtis

15  Management and Consulting, LLC's Motion to Dismiss," Plaintiffs complain that Curtis

16  Management representatives appeared in court unlawfully, signed court documents

17  unlawfully, and represented themselves as attorneys to get the debt. (Doc. 169-1 at 3, 5.)

18

19          The Court has determined that it would be futile to allow Plaintiffs to file their

20  proposed Second Amended Complaint reasserting their FDCPA claim. Plaintiffs' FDCPA

21  claim based on Defendants' alleged unauthorized practice of law does not state a cognizable

22  claim. Plaintiffs' FDCPA claims based on the alleged unlawful recording of notices of liens

23  are barred by the applicable one-year limitations period as to all plaintiffs except Leatham.

24  Plaintiffs' proposed Second Amended Complaint still names certain entities as Defendants

25  but then fails to allege facts tracing a harm or injury to those certain Defendants. The federal

26  district court does not apply substantive Arizona law to constitutional standing requirements.

27  Plaintiffs' Amended Motion to Vacate and Set Aside the Orders of Dismissal is denied.

28                    **4.      Remand to State Court**

1   This case was removed based on federal question jurisdiction. The Court has
2   determined that Plaintiffs' FDCPA claim asserted in the First Amended Complaint should
3   be dismissed. The Court further has determined that Plaintiffs' request to file a Second
4   Amended Complaint reasserting their FDCPA claim should be denied as futile. Because
5   Plaintiffs cannot cure the deficiencies of their FDCPA claim, that claim is dismissed with
6   prejudice from the First Amended Complaint.

7   This case was properly removed but the First Amended Complaint no longer asserts
8   a federal claim. It is within the Court's discretion to exercise supplemental jurisdiction over
9   Plaintiffs' remaining claim for violation of Arizona's wrongful lien statute. 28 U.S.C. §
10  1367(c); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40 (2009). This case is in
11  the early stages of litigation. Upon consideration of the interests of judicial economy,
12  convenience, fairness and comity, the Court declines to exercise supplemental jurisdiction
13  and remands the remaining state law claim to state court. *Carnegie-Mellon Univ. v. Cohill*,
14  484 U.S. 343, 357 (1988). The parties' remaining motions relevant to the state law claim are
15  more properly addressed to the state court for consideration and disposition.

16  **III.    CONCLUSION**

17  The Court has determined that Plaintiffs' FDCPA claim(s) should be dismissed with
18  prejudice. The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining
19  state law claim for violation of Arizona's wrongful lien statute. Any motion for attorneys'
20  fees and costs may be filed based on appropriate authority and according to Rules 54.1 and
21  54.2 of the Local Rules of the District of Arizona.

22  **IT IS ORDERED** granting Community Asset Management LLC's Motion to Dismiss
23  Plaintiffs' First Amended Complaint (Doc. 35); AAM, LLC's Motion to Dismiss Plaintiffs'
24  First Amended Complaint (Doc. 56); Stratford Management's Motion to Dismiss Plaintiffs'
25  First Amended Complaint (Doc. 111); Stratford Management's Motion for Summary
26  Disposition (Doc. 151); Renaissance Community Partners LLC's Motion to Dismiss
27  Plaintiffs' First Amended Complaint (Doc. 116); Renaissance Community Partners LLC's
28  Motion for Summary Disposition (Doc. 155); Cornerstone Properties, Inc's Joinder in AAM,

LLC's Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 63); Allen Group Inc. D/B/A Total Property Management's Motion to Dismiss and Joinder in Motions to Dismiss Filed by Defendants AAM and Community Asset Management (Doc. 170); Golden Valley Collections and Golden Valley Property Management's Joinder in AAM, LLC's Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 64); and Golden Valley Collections and Golden Valley Property Management's Request for Summary Disposition (Doc. 146).

**IT IS FURTHER ORDERED** dismissing with prejudice the Fair Debt Collection Practices Act claim as asserted in Plaintiffs' First Amended Complaint.

**IT IS FURTHER ORDERED** denying Plaintiffs' Motion Supplement Motion for Leave to Amend First Amended [Doc. 184] [Complaint] as to the Fair Debt Collection Practices Act claim (Doc. 205).

**IT IS FURTHER ORDERED** denying Plaintiffs' Amended Motion to Vacate and Set Aside the Orders of Dismissal (Doc. 172).

**IT IS FURTHER ORDERED** remanding this case to the Superior Court in and for Maricopa County, State of Arizona.


DATED this 14th day of August, 2013.


_____
Susan R. Bolton
United States District Judge